IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AARON L. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV911 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Aaron Jones ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for Supplemental Security Income Benefits ("SSI") on May 19, 2008, alleging a disability onset date of January 5, 2007. (Tr. at 106-31.)[2] His

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #8].

applications were denied initially (Tr. at 31) and upon reconsideration (Tr. at 32). Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. at 4), which Plaintiff attended with his attorney on April 20, 2010 (Tr. at 9). The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 16) and, on September 24, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-3).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant has not engaged in substantial gainful activity since May 19, 2008, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: history of stroke, depression, and left eye vision (20 CFR 416.920(c)).
> . . . .
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
> . . . .
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except no working around heights, no climbing, no working around hazardous machinery, and no detailed visual requirement.

(Tr. at 11, 13, and 14.)

Considering Plaintiff's age and education, along with the above findings regarding residual functional capacity ("RFC"), the ALJ ultimately determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 15.) He therefore

determined that Plaintiff was not under a "disability," as defined in the Act, from his alleged onset date through the date of the decision. (Tr. at 16.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where

conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

A finding adverse to the claimant at any of several points in this five-step sequence foreclosesa disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his application date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from three severe impairments: history of stroke, depression, and left eye vision. (Tr. at 11.) The ALJ found at step three that none of these impairments met or equaled a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform medium work with further, non-exertional restrictions. (Tr. at 14.) At step four of the analysis, the ALJ noted that Plaintiff has no past relevant work. However, he concluded at step five that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy and was therefore not disabled. (Tr. at 15.)

Plaintiff now argues that the ALJ erred in failing to (1) find any mental RFC limitations resulting from Plaintiff's impairments, and (2) "address evidence from a previous Appeals Council decision that Plaintiff suffers from Borderline Intellectual Functioning." (Pl.'s Br. [Doc.

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

#11] at 2.) Defendant contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled. (Def.'s Br. [Doc. #16] at 17.)

For the reasons set out below, the Court finds that the ALJ's failure to incorporate any limitations from Plaintiff's mental impairments in his RFC warrants remand. Because Plaintiff's other issues can be addressed further as part of the remand, the Court will not consider the additional issues raised by Plaintiff at this time.

A.   Mental RFC Determination

Plaintiff contends that the ALJ's failure to find any RFC limitations resulting from his severe mental limitations conflicted with the substantial evidence. A claimant's RFC is the administrative assessment of his "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite his impairments and related symptoms. S.S.R. 96-8p, 1996 WL 374184, at *1; see also 20 C.F.R. § 416.945(a)(1). In other words, the RFC represents the *most* a claimant can do despite his limitations or restrictions. Although an ALJ is not automatically required to include limitations from all of a claimant's step two severe impairments when assessing his RFC, see Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished) (mere existence of a severe impairment is not proof that limitations from the impairment "have the greater significant and specific nature required to gain their inclusion in an RFC assessment"), the ALJ must include such limitations where the evidence supports a finding that the underlying impairments will limit the claimant's ability to work.

In this case, the medical evidence supports the inclusion of mental limitations from Plaintiff's depression and history of stroke in his RFC. Specifically, the ALJ gave "great weight" to the professional opinion of John H. Bevis, M.A., a psychologist with Disability Determination Services ("DDS"). Relying on that opinion, the ALJ specifically included the following findings in the decision:

> The claimant was capable of understanding and following simple instructions. He maintained appropriate attention and concentration in order to perform simple repetitive tasks that do not require heavy labor or fine motor control with his left side. He appears to be capable of relating to fellow workers and supervisors under normal circumstances. He may experience some difficulties tolerating the stressors, pressures, and demands associated with a full-term work routine due to the history of his vascular stroke in of 2007 which may have affected his emotional stability and judgment.

(Tr. at 12 (citing Tr. at 373).) In line with this opinion, the ALJ determined that Plaintiff suffered moderate difficulties in concentration, persistence or pace, moderate restrictions in activities of daily living, and mild difficulties in social functioning. (Tr. at 13.) Notably, the decision recounts no medical evidence contrary to the DDS report, and none is apparent from a review of the record as a whole.

Despite these findings, the ALJ failed to reflect any related mental limitations in Plaintiff's RFC, and failed to offer any explanation for excluding these mental limitations. In her brief, Defendant concedes that the ALJ's RFC finding did not expressly include any mental limitations. In addition, Defendant does not contend that the ALJ explained this exclusion. Instead, Defendant contends that the ALJ's decision ultimately accounted for these mental limitations

8

in light of the ALJ's determination at step five that Plaintiff could perform "unskilled" work.[6]

At step five, the government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations,[7] the ALJ may apply the Social Security Administration's medical-vocational guidelines (the "grids"), contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n.1 (4th Cir. 1983). If, however, the claimant suffers from nonexertional limitations,[8] the grids are not determinative, and the ALJ must consider vocational expert testimony. Id. Here, the ALJ found that Plaintiff's nonexertional limitations had "little or no effect on the occupational base of unskilled medium work." (Tr. at 15.) He therefore applied Medical-Vocational Rule 203.28, which directed a finding of "not disabled."[9]

Defendant contends that the reference to "unskilled" work at step five renders any error in Plaintiff's RFC determination harmless. With respect to harmlessness, courts have held that failure to specifically identify a limitation in a claimant's RFC constitutes harmless error when the hypothetical question posed to the VE included the limitation. See, e.g., Burnette v. Astrue,

---

[6] The reference to "unskilled" work was not specifically included in the RFC, but was part of the determination at step five.

[7] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. §§ 404.1569a(b); 416.969a(b).

[8] Nonexertional limitations affect a claimant's ability to meet the other demands of job and include mental limitations, pain limitations, and physical limitations not included in the seven strength demands.

[9] Medical-Vocational Rule 203.28 applies to claimants whose educational level is "[h]igh school graduate or more." In this case, Plaintiff dropped out of school in 12th grade. However, because Rule 203.25, which applies to claimants with more limited education, also directs a finding of not disabled, the error is harmless.

9

No. 2:08-CV-009-FL, 2009 WL 863372, at *12 (E.D.N.C. Mar. 24, 2009) (unpublished); Stark v. Astrue, 462 F. App'x 756 (9th Cir. 2011); Stovall v. Astrue, No. 3:11-CV-10 (CDL), 2011 WL 7078304, at *3 n.1 (M.D. Ga. Dec. 9, 2011) (unpublished). Because the grids merely provide an alternative path to VE testimony at step five, it follows that this rule could also apply where the grids encompass an earlier, omitted restriction. However, "[r]egardless of whether an ALJ relies on the grids or VE testimony, his step five analysis must capture, in functional terms, 'the concrete consequences of a claimant's deficiencies' as supported by the substantial evidence." Boler v. Colvin, No. 1:10CV451; 2013 WL 5423647 (M.D.N.C. Sept. 26, 2013) (quoting Cox v. Astrue, 495 F.3d 614, 620 (8th Cir. 2007)).

Defendant contends that this standard has been satisfied here because the restriction to unskilled work in this case adequately encompasses Plaintiff's mental limitations. "Unskilled work" is a term of art, defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). This Court, along with others within the Fourth Circuit, has held that "whether or not unskilled work squares with a claimant's particular mental limitations presents a fact-specific determination." Boler v. Colvin, 2013 WL 5423647 (M.D.N.C. Sept. 26, 2013) (citing Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir.1984)). Where, for example, the medical evidence showed that a claimant was moderately limited in concentration, persistence, or pace, but nonetheless capable of understanding and retaining simple instructions, sustaining attention and concentration for at least two hours, and performing simple, routine, repetitive tasks in a low stress environment with limited social contact, the hypothetical properly described the claimant as a functionally illiterate

individual restricted to performing unskilled work consisting of simple, routine, repetitive tasks with limited contact with co-workers and the general public. Hawley v. Astrue, No. 1:09CV246, 2012 WL 1268475, at *7-8 (M.D.N.C. Apr. 16, 2012) (unpublished). In contrast, another recent case held that a mere limitation to "'unskilled, simple, and repetitive work'" failed to adequately encompass the claimant's moderate difficulties in concentration, persistence, or pace. Tune v. Astrue, 760 F. Supp. 2d 555, 563 (E.D.N.C. 2011).

Having considered these cases and the cases cited by Defendant, the Court concludes that in the present case, the general reference to "unskilled" work does not, without more, sufficiently encompass the earlier findings made by the ALJ, based on the medical record, that Plaintiff could perform "simple repetitive tasks," with "simple instructions," in a low-stress work environment. Cf. Boler v. Colvin, 2013 WL 5423647 (M.D.N.C. Sept. 26, 2013) ("[I]t is clear that 'simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work' in general." (quoting McClendon v. Astrue, No. 1:10CV411, 2012 WL 13525, at * 7 (M.D.N.C. Jan. 4, 2012) (unpublished)). Accordingly, the limitation to unskilled work at step five fails to render the error in the ALJ's RFC assessment harmless. Moreover, because the ALJ failed to address or explain his consideration of these mental limitations in formulating the RFC, and failed to explain his assessment of these mental limitations in the determination that there was no erosion of the occupational base, this Court cannot complete meaningful judicial review of the ALJ's decision. Therefore, the Court should reverse the Commissioner's decision as to the RFC and remand the case for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for reassessment of Plaintiff's RFC in accordance with this recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 14th day of August, 2014.

/s/ Joi Elizabeth Peake
United States Magistrate Judge